USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:   7/30/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
GREENTREE FINANCIAL GROUP, INC.,             :
                                             :
                              Plaintiff,     :
                                             :
            -against-                        :          24-CV-6415 (VEC)
                                             :
CHIJET MOTOR COMPANY, INC., and              :          OPINION & ORDER
EQUINITI TRUST COMPANY, LLC, f/k/a           :
AMERICAN STOCK TRANSFER & TRUST              :
COMPANY, LLC,                                :
                                             :
                              Defendants.    :
------------------------------------------------------------- X
CHIJET MOTOR COMPANY, INC.,                  :
                                             :
                  Counterclaim Plaintiff,    :
                                             :
            -against-                        :
                                             :
GREENTREE FINANCIAL GROUP, INC., and         :
WEIHENG CAI, an Individual,                  :
                                             :
              Counterclaim Defendants.       :
------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

Greentree Financial Group, Inc. ("Greentree") brings this breach of contract action

against Chijet Motor Company, Inc. ("Chijet") and its transfer agent Equiniti Trust Company,

LLC ("Equiniti," and with Chijet, "Defendants"), alleging that Defendants breached a series of

agreements when they failed to transfer shares of Chijet to Greentree upon the occurrence of

certain trigger events.  Equiniti moved to dismiss the Amended Complaint, Dkt. 23, for failure to

state a claim, and Chijet answered the Amended Complaint, asserting a counterclaim against

Greentree and an individual, Weiheng Cai, for breach of fiduciary duty.  Greentree moved to

dismiss Chijet's counterclaim on the grounds of lack of subject matter jurisdiction and failure to state a claim.  For the following reasons, Equiniti's motion to dismiss is GRANTED.  The Court construes Greentree's motion to dismiss for lack of subject matter jurisdiction as a motion to compel arbitration and GRANTS that motion.  Chijet's counterclaim against Greentree is STAYED pending the parties' arbitration.

## BACKGROUND[1]

Chijet is a Cayman Islands exempted company with its principal place of business in China.  Am. Compl. ¶ 6.  On October 25, 2022, Chijet entered into a Business Combination Agreement ("BCA") with Jupiter Wellness Acquisition Corporation ("JWAC"), a special purpose acquisition company ("SPAC"), Chijet Motor (USA) Company, Inc. (the "Merger Sub"), Chijet, Inc. (the "Target"), all holders of outstanding capital shares in the Target, and Chijet CEO Hongwei Mu.  The purpose of the BCA was to effect a reverse merger that would, eventually, lead to the Target becoming a wholly-owned subsidiary of Chijet, *id.* ¶ 13, Answer, Dkt. 48, ¶¶ 112, 134, and effectively allow Chijet to be listed on a U.S. stock exchange without undergoing an initial public offering.  Greentree is a stockholder in JWAC.  Am. Compl. ¶ 18.

On May 1, 2023, Greentree entered into the Non-Redemption Agreement with Chijet, JWAC, and yet another entity, Chijet Holdings Limited.  *Id.* ¶¶ 1, 18.  Under Sections 1.1 and 1.2 of the Non-Redemption Agreement, Greentree waived its right to dispose of its JWAC shares in any way prior to the closing and Chijet going public.  *Id.* ¶¶ 19–20.  In exchange, Chijet agreed to provide certain "down-side protections" to Greentree.  *Id.* ¶ 21.  Under Section 2.1, if Chijet's stock price fell below specific price floors, then a "Trigger Event" occurred requiring Chijet to

---

[1]    For the purposes of a motion to dismiss, the well-pled facts as alleged in the Amended Complaint and Chijet's Counterclaim are assumed to be true.  *See MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012).

issue new shares to Greentree.  *Id.* ¶ 22.  On June 23, 2023, Chijet's stock price fell below the floor, requiring it to register shares for Greentree with the SEC.  *Id.* ¶¶ 24–26.  Chijet never did so.  *Id.* ¶¶ 27–32.

About a month prior to the Trigger Event occurring, Chijet entered into the Contingent Value Rights ("CVR") Agreement with Equiniti.  *Id.* ¶¶ 1, 33.  Greentree is a CVR Holder under the CVR Agreement — a shareholder that is afforded the right to receive a contingent payment of Chijet shares upon the occurrence of certain trigger events under the BCA or the CVR Agreement.  *Id.* ¶ 34.  Greentree alleges that, pursuant to Section 5.3 of the CVR Agreement, it is an "express third-party beneficiary" that is entitled "to enforce the rights expressly granted to" it under the agreement.  *Id.* ¶ 35.  Greentree alleges that under the BCA, if Chijet fails to achieve certain revenue targets for 2023, 2024, and 2025, Greentree has a contingent right to receive shares in Chijet.  *Id.* ¶ 36.  Equiniti is responsible for maintaining a register of all CVR Holders' rights and to effectuate transfers of shares pursuant to those rights.  *Id.* ¶ 37.  Under Section 3.1 of the CVR Agreement, Equiniti is liable for any actions or inactions under the agreement that stem from willful misconduct, bad faith, or gross negligence.  *Id.*  If any shareholders are eligible for shares, Chijet is obligated to inform Equiniti in writing within ten business days of the determination that the shares are owed.  *Id.* ¶ 40.

Because Chijet did not achieve its gross revenue targets for 2023, Greentree alleges that it is entitled to shares.  *Id.* ¶ 41.  Pursuant to Section 2.3(e) of the BCA, Chijet was required to give notice to Equiniti that it failed to hit its annual gross revenue targets.  *Id.* ¶ 44.  Section 2.3(d) requires Equiniti to promptly issue the shares upon such notice.  *Id.* ¶ 45.  Because there were public filings that revealed Chijet failed to achieve its revenue targets and because Chijet was required to provide notice to Equiniti that it had failed to meet the revenue thresholds, Greentree

contends that Equiniti was aware of those failures and was required to release the shares to Greentree. *Id.* ¶¶ 37, 46. Greentree's counsel sent a demand letter to Equiniti on July 17, 2024, but Equiniti never released the shares. *Id.* ¶¶ 47–51.

In Chijet's telling, however, this breach of contract action is not so straightforward. Chijet counterclaimed, alleging that Greentree is no "innocent shareholder." *Id.* ¶ 1. Chijet hired Greentree as its financial advisor to guide it through its U.S. public listing, but Greentree failed to disclose significant conflicts of interest that benefited Greentree at Chijet's expense. Answer ¶¶ 91–99. Chijet and its leadership team are based in China, and none of Chijet's executives has any experience with U.S. markets or speaks English. *Id.* ¶¶ 110–13. In early 2021, Chijet sought a listing on the U.S. stock market to gain much-needed working capital. *Id.* ¶¶ 114–15. Chijet CEO Hongwei Mu's personal financial adviser introduced him to Greentree and Weiheng Cai, whom Greentree held out as its principal. *Id.* ¶¶ 116. In March 2021, Chijet hired Greentree to assist it in going public by organizing a reverse merger with a SPAC and preparing Chijet to conform with U.S. regulatory requirements for a publicly-listed company. *Id.* ¶ 119. Chijet placed its full reliance and trust in Greentree. *Id.* ¶¶ 120–23.

Unbeknownst to Chijet, Greentree held a significant ownership stake in JWAC, Chijet's eventual SPAC sponsor. *Id.* ¶¶ 16, 124. Neither Cai nor Greentree disclosed that Greentree was a significant shareholder in JWAC or that JWAC's CFO was a former Greentree analyst. *Id.* ¶ 127. In January 2022, Chijet made a presentation to JWAC's board of directors and sought to move forward with a merger transaction valued at approximately $2.55 billion. *Id.* ¶ 128. Despite Chijet's frequent reminders to Greentree that it wanted to complete the transaction quickly, progress with JWAC stalled; Greentree introduced Chijet to another potential SPAC, Deep Medicine Acquisition Corporation ("DMAQ"), another entity in which Greentree held

shares that was steered by a person who was previously employed by Greentree. *Id.* ¶ 129. In July 2022, Chijet entered a business combination agreement with DMAQ that valued Chijet at $2.1 billion — lower than Chijet's previous valuation. *Id.* ¶ 131. Greentree pressured Chijet to restructure the agreement to include earnout clauses that conditioned Chijet's earnings upon it meeting certain performance metrics. *Id.* After Chijet conducted diligence on DMAQ and because of the lower valuation it received, on September 26, 2022, the parties terminated the agreement. *Id.*

Understanding the time and capital pressures on Chijet, Greentree reintroduced Chijet to JWAC shortly after the deal with DMAQ fell through. *Id.* ¶ 132. The Chijet-JWAC BCA valued Chijet at only $1.6 billion and was structured with risky earnout clauses. *Id.* ¶ 134. Chijet agreed to the BCA because Greentree promised that it would provide subsequent financing of $500 million to $1 billion, but that funding never materialized. *Id.* ¶ 135. Chijet claims that the CVR and Non-Redemption Agreements (that Greentree now claims Chijet breached) further extracted value from Chijet to Greentree's benefit at a time when Chijet was desperate to secure capital. *Id.* ¶¶ 137–40. Following Chijet's listing on the Nasdaq, on July 8, 2024, Chijet effected a reverse stock split, prompting Greentree to exercise warrants that would result in Greentree controlling approximately 80% of Chijet's shares. *Id.* ¶¶ 141–44.

In addition to the above-detailed failure to disclose its ownership interest in JWAC, Chijet also claims that Greentree failed to disclose that its CEO and President previously pled guilty to conspiracy to defraud the U.S. Government. *Id.* ¶¶ 145–49. Cai also faced lawsuits in California and Nevada for breach of fiduciary duty, corporate waste, and unjust enrichment. *Id.* ¶¶ 150–51.

On August 26, 2024, Greentree sued Chijet and Equiniti alleging that Chijet breached the Non-Redemption Agreement and that Chijet and Equiniti breached the CVR Agreement. *See*

Compl., Dkt. 1.  Greentree amended its complaint, and Chijet answered asserting a counterclaim

for breach of fiduciary duty against Greentree and Cai; Equiniti moved to dismiss the amended

complaint against it for failure to state a claim.[2]  *See* Answer; Equiniti Mem., Dkt. 47.  Greentree

moved to dismiss Chijet's counterclaim or, in the alternative, for leave to file a Second Amended

Complaint.  *See* Greentree Dismissal Mem., Dkt. 60; Greentree Leave to Amend Mem., Dkt. 63.

All motions were opposed.

## DISCUSSION

### I.    Standards of Review

To survive a motion to dismiss for failure to state a claim, a complaint must allege

"sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)).  In evaluating a Rule 12(b)(6) motion, the Court construes the complaint liberally

and draws all reasonable inferences in the light most favorable to the plaintiff.  *See Gibbons v.

Malone*, 703 F.3d 595, 599 (2d Cir. 2013) (citations omitted).

The plaintiff bears the burden of proving that subject matter jurisdiction exists.  *Morrison

v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted).  To decide a

Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a court must accept as

true all factual allegations, "draw all reasonable inferences in favor of plaintiff[,]" and "may

consider evidence outside the pleadings."  *Id.* (citations omitted).

Courts deciding a motion to compel arbitration pursuant to the Federal Arbitration Act

("FAA") apply a "standard similar to that applicable for a motion for summary judgment" and

---

[2]        Cai has not appeared in this proceeding.

"consider all relevant, admissible evidence submitted by the parties and contained in pleadings," as well as, *inter alia*, "affidavits." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (citations omitted). The Court is required to draw all reasonable inferences in favor of the non-moving party. *Id.*

## II.    Equiniti's Motion to Dismiss is Granted

It is well established that, to state a claim for breach of contract under New York law,[3] a plaintiff must allege that: (1) "a contract exists;" (2) "plaintiff performed in accordance with the contract;" (3) "defendant breached its contractual obligations;" and (4) "defendant's breach resulted in damages." *34-06 73, LLC v. Seneca Ins. Co.*, 39 N.Y.3d 44, 52 (2022) (citations omitted). Section 3.1 of the CVR Agreement contains an exculpatory clause that relieves Equiniti from liability for any actions or inactions in connection with the agreement, unless it engaged in willful misconduct, bad faith, or gross negligence. Am. Compl. ¶ 37; CVR Agreement at 7, Section 3.1.[4]

Greentree has failed to allege facts that would permit the Court reasonably to infer that Equiniti's breach of the agreement was the result of willful misconduct, bad faith, or gross negligence. "Willful misconduct" in a breach of contract action requires some showing of "tortious intent, such as fraud, malice, a dishonest purpose or bad faith." *In re CCT Commc'ns,*

---

[3]    Greentree alleges that the Non-Redemption Agreement and the CVR Agreement contain choice of law provisions requiring New York law to govern its claims. Am. Compl. ¶ 12. The CVR Agreement and the BCA both contain such provisions. *See* Dkt. 46-1 ("CVR Agreement") at 12, Section 5.4; Dkt. 46-2 ("BCA") at 77, Section 13.4. Equiniti relies on New York law in its motion to dismiss. Equiniti Mem. at 5. Accordingly, the Court assesses Equiniti's motion to dismiss under New York law. *See Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, 41 N.Y.3d 462, 476 (2024) ("[W]hen the parties have chosen New York law, a court may not contravene that choice through a common-law conflicts analysis.").

[4]    In general, New York law treats an exculpatory clause as valid and enforceable unless the clause "purports to preclude damages for *all* delays resulting from *any* cause whatsoever." *Corinno Civetta Const. Corp. v. City of New York*, 67 N.Y.2d 297, 309 (1986). Even for such a broad clause, damages may be recovered for a party's "bad faith or its willful, malicious, or grossly negligent conduct." *Id.* Greentree does not challenge the validity of the CVR Agreement's exculpatory clause; in any event, it is clearly valid under New York law.

*Inc.*, 464 B.R. 97, 106 (Bankr. S.D.N.Y. 2011) (citing *Kalisch-Jarcho, Inc. v. City of New York*, 58 N.Y.2d 377, 383–85 (1983)).  Conduct is grossly negligent if it "evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing."  *Am. Auto. Ins. Co. v. Rest Assured Alarm Sys., Inc.*, 786 F. Supp. 2d 798, 807 (S.D.N.Y. 2011) (citation omitted).  Bad faith behavior "requires an extraordinary showing of a disingenuous or dishonest failure to carry out a contract."  *Gordon v. Nationwide Mut. Ins. Co.*, 30 N.Y.2d 427, 437 (1972).

Greentree speculates that Equiniti was fully aware of Chijet's failure to meet revenue requirements due to the public nature of Chijet's filings and Chijet's contractual obligation to notify Equiniti if it failed to meet the revenue targets.  Am. Compl. ¶ 37.  Greentree argues that Equiniti's refusal to release the shares despite its awareness that the underlying trigger event occurred amounts to willful misconduct or bad faith.  *Id.* ¶ 49.  But those facts do not amount to an "extraordinary showing" of Equiniti's "dishonest failure" to transfer the shares, *Gordon*, 30 N.Y.2d at 437; rather, Greentree's allegations amount to a claim that Equiniti simply breached the CVR Agreement, not that it engaged in any "intentional wrongdoing" akin to a tort.  *Am. Auto. Ins. Co.*, 786 F. Supp. 2d at 807 (citation omitted).  To adopt Greentree's position would read the exculpatory clause out of the CVR Agreement entirely, in contravention of the Court's obligation to afford "a fair meaning to all of the language employed by the parties in the contract and leave[] no provision without force and effect."  *In re Viking Pump, Inc.*, 27 N.Y.3d 244, 257 (2016) (citation omitted).

Accordingly, Equiniti's motion to dismiss Greentree's breach of contract claim is GRANTED with prejudice, as Greentree already amended its pleading in response to an earlier motion to dismiss made by Equiniti on the same grounds.  *See Offor v. Mercy Med. Ctr.*, 676 F. App'x 51, 54 (2d Cir. 2017) (unpublished) (no abuse of discretion where complaint already

amended once, and plaintiff moved to amend the complaint again after defendants had moved to dismiss).

### III.    The Parties Must Arbitrate Chijet's Counterclaim

Greentree moves pursuant to Rule 12(b)(1) to dismiss Chijet's counterclaim for breach of fiduciary duty because the parties are required to arbitrate that claim. This is so, Greentree argues, because any fiduciary duty it owed Chijet is rooted in the series of Service Agreements between the parties. *See* Greentree Dismissal Mem. at 3–6, 8–9; Cottone Decl., Dkt. 58, Exs. A–C, Dkts. 58-1–58-3 ("Service Agreements"). Those Service Agreements each contain a "Governing Law and Consent to Jurisdiction" provision that designates Florida law as the governing law and states: "[a]ll disputes arising out of or in connection with this agreement, *or in respect of any legal relationship associated with or derived from this agreement*, shall only be heard in China International Economic and Trade Arbitration Commission ('CIETAC') located in Beijing, China." Dkt. 58-1 at 10,[5] Section 7; Dkt. 58-2 at 10, Section 7; Dkt. 58-3 at 9, Section 7 (emphasis added). Chijet's counterclaim does not mention the Service Agreements and instead relies on the New York choice of law and forum selection clauses in the BCA, Non-Redemption Agreement, and CVR Agreement. Answer ¶ 105. Chijet offers little substantive justification for its reliance on those agreements, arguing only that its claim arises from a fiduciary relationship separate from any contractual breach. *See* Chijet Dismissal Opp., Dkt. 77, at 4–5 (citing *Meyers v. Waverly Fabrics, Div. of F. Schumacher & Co.*, 65 N.Y.2d 75, 80 n.2 (1985)).

---

[5]    Pagination of the Service Agreements refers to the page numbers on ECF.

### A. The Court Treats Greentree's Dismissal Motion as a Motion to Compel Arbitration

As an initial matter, the Court converts Greentree's motion to dismiss to a motion to compel arbitration. It is a somewhat open question whether Rule 12(b)(1) or Rule 12(b)(6) is the correct procedural vehicle under which to move to dismiss based on an arbitration clause. *Fed. Ins. Co. v. Metro. Transportation Auth.*, No. 17 CIV. 3425 (JFK), 2018 WL 5298387, at *3 (S.D.N.Y. Oct. 25, 2018), *aff'd,* 785 F. App'x 890 (2d Cir. 2019). The Second Circuit has held that, in a case where the defendants moved to dismiss for lack of subject matter jurisdiction due to ongoing arbitration proceedings, the district court had federal question jurisdiction to reach the merits of the plaintiff's claim. *Dylan 140 LLC v. Figueroa as Tr. of Bldg. Serv. 32BJ Health Fund*, 982 F.3d 851, 855–56 (2d Cir. 2020). The court reasoned that the defendants confused "whether the district court had subject matter jurisdiction with whether [the plaintiff] stated a proper cause of action in its complaint." *Id.* at 855. That reasoning suggests that the Court's analysis of whether it has subject matter jurisdiction — in this case, diversity jurisdiction — is independent of whether there is an agreement to arbitrate the dispute.

Furthermore, several courts in the Second Circuit have converted motions to dismiss premised on mandatory arbitration clauses to motions to compel arbitration. *See Nicosia*, 834 F.3d at 230 (collecting cases). The Second Circuit has neither endorsed nor prohibited that practice in all circumstances; it has held, however, that it is appropriate to use the summary judgment standard and to treat the motion as a motion to compel arbitration: (1) "where the District Court is required to determine arbitrability;" and (2) when the moving party "manifest[s] an intention to arbitrate the dispute." *Id.* (quoting *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)).

10

Because the Service Agreements' arbitration clauses do not implicate the diversity jurisdiction analysis in this action, it is inappropriate to assess Greentree's motion to dismiss under Rule 12(b)(1). *See Dylan 140 LLC*, 982 F.3d at 855–56. Evaluating the motion under the Rule 12(b)(6) standard poses practical difficulties, as Chijet's counterclaim does not reference or even mention the Service Agreements, and the Court's analysis for a 12(b)(6) motion would be "governed by the four corners of the counterclaim[]." *Zurich Am. Life Ins. Co. v. Nagel*, 571 F. Supp. 3d 168, 182 (S.D.N.Y. 2021). Greentree's motion requires the Court to assess the arbitrability of Chijet's breach of fiduciary duty claim, and Greentree has manifested an intent to arbitrate this dispute. *See* Greentree Dismissal Mem. at 2. ("[A]s part of its 12(b)(1) dismissal application, Greentree . . . also moves to compel arbitration of Chijet's counterclaim. . . . Chijet should not be allowed to game the system and assert a counterclaim that unequivocally must be arbitrated in China."). Accordingly, the Court construes Greentree's motion as a motion to compel arbitration. *See Nicosia*, 834 F.3d at 230.

### B. The Service Agreements Mandate Arbitration of Chijet's Counterclaim

To decide whether Chijet's counterclaim must be arbitrated, the Court considers: "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011).[6] Chijet fails to adduce any evidence

---

[6]    The parties paper over the threshold issue of whether the FAA or state law governs this dispute. Greentree argues that the choice of law provisions in the Service Agreements require the application of Florida law, Greentree Dismissal Mem. at 8–9, and Chijet does not address the issue. The FAA has "substantive supremacy" over state arbitration law, *Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009) (citations omitted), and applies to arbitration agreements that affect interstate commerce, *Mehler v. Terminix Int'l Co. L.P.*, 205 F.3d 44, 47 (2d Cir. 2000). The Service Agreements — entered between China- and Florida-based companies to effect a public listing on the Nasdaq stock exchange — clearly affect interstate commerce. The Service Agreements' choice of law provisions, although broad, do not require application of Florida law to questions of arbitrability. The Court therefore applies precedent interpreting the FAA rather than Florida law.

pertaining to the validity or scope of the arbitration provisions in the Service Agreements.

Therefore, the Court analyzes Greentree's motion to ensure that there is no material issue of fact

regarding the validity and scope of the agreements and that Greentree is entitled to judgment as a

matter of law.  *See Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir.

2004).  The validity of the Service Agreements is uncontested by Chijet,[7] so the Court focuses on

the second element.

Due to the "strong federal policy favoring arbitration as an alternative means of dispute

resolution," "where, as here, the existence of an arbitration agreement is undisputed, doubts as to

whether a claim falls within the scope of that agreement should be resolved in favor of

arbitrability."  *Hartford Acc. & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226

(2d Cir. 2001).  The Service Agreements detail the tasks Greentree was hired to perform that give

rise to Chijet's breach of fiduciary duty claim, including: bringing Chijet's financial reporting

---

[7]      Greentree entered into Service Agreements with Shandong Baoya New Energy Automobile Co., Ltd. ("Shandong Baoya"), in 2021 and 2022, and entered into the 2023 Service Agreement with Chijet.  *See* Service Agreements.  In its Answer, Chijet stated that Chijet Inc., a wholly-owned subsidiary of Chijet, owns 85% of Shandong Baoya, and Shandong Baoya serves as "the core operating entity among the Chijet entities."  Answer ¶ 92 n.1.  Indeed, Chijet's counterclaim refers to Chijet and its affiliated entities Chijet Inc. and Shandong Baoya collectively.  *Id.*

In the very same motion in which Greentree seeks to enforce the Service Agreements' arbitration provisions, it also argues, in the alternative, that there is a lack of privity between it and Chijet with respect to the 2021 and 2022 Service Agreements with Shandong Baoya.  Greentree Dismissal Mem. at 2, 15–17.  Chijet did not engage on that point, leaving the Court in the awkward position of assessing privity of contract where the only party arguing against contractual privity also seeks enforcement of the agreements.  It is well settled under Florida law that "[a]rbitration provisions are personal covenants, usually binding only upon the parties to the covenant."  *Am. Int'l Grp., Inc. v. Cornerstone Businesses, Inc.*, 872 So. 2d 333, 336 (Fla. Dist. Ct. App. 2004) (citation omitted).  A non-signatory may be bound through: "(1) incorporation by reference; (2) assumption; (3) agency; (4) veil piercing/alter ego; and (5) estoppel."  *Allied Pros. Ins. Co. v. Fitzpatrick*, 169 So. 3d 138, 142 (Fla. Dist. Ct. App. 2015).  Given Chijet's failure to contest the validity and scope of the Service Agreements and its own representations about the closeness between it and Shandong Baoya, the Court concludes that the Service Agreements for 2021 and 2022 and their arbitration provisions apply to Chijet under an agency theory.  *See Miami Dolphins, Ltd. v. Engwiller*, 410 So. 3d 685, 690 (Fla. Dist. Ct. App. 2025) ("Actual agency requires (1) acknowledgment by the principal that the agent will act for him, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent." (citation and internal quotation marks omitted)).

systems into compliance with generally accepted accounting principles in the United States; introducing Chijet to SPACs; responding to questions from Nasdaq listing staff; and preparing a code of conduct for directors and officers. *Compare* Service Agreements *with* Answer ¶ 119. By their terms, the arbitration clauses apply not only to "disputes arising out of or in connection with" the agreements, but also to disputes regarding "any legal relationship associated with or derived from" the agreements. Dkt. 58-1 at 10, Section 7; Dkt. 58-2 at 10, Section 7; Dkt. 58-3 at 9, Section 7. Chijet's breach of fiduciary duty claim thus falls squarely within the scope of those provisions, as Greentree's alleged duties as a fiduciary are, at the very least, associated with the services that Greentree contracted to provide pursuant to the Service Agreements. *See CollegeStreet Imp. & Exp. (Tianjin) Co. v. TL x HF, LLC*, No. 24-CV-4522 (JSR), 2025 WL 979756, at *6 (S.D.N.Y. Apr. 2, 2025) (fiduciary-breach claim falls within a broad arbitration provision found in an agreement that outlined a party's fiduciary duties).

Therefore, Chijet's counterclaim against Greentree for breach of fiduciary duty must be arbitrated in China.

## IV.    Chijet's Counterclaim is Stayed, Rather Than Dismissed

Greentree seeks dismissal of Chijet's counterclaim. Because all claims in this action will not be resolved through arbitration of Chijet's counterclaim, the Court stays the counterclaim as to Greentree.

The Supreme Court held that, when a federal court determines that a dispute is subject to arbitration and a party requests a stay of the proceeding pending arbitration, the court does not have discretion to dismiss the suit even if all of the claims are subject to arbitration; rather, Section 3 of the FAA requires the court to stay the proceeding pending arbitration. *Smith v. Spizzirri*, 601 U.S. 472, 475–78 (2024). Here, Chijet has not requested a stay, rendering it

unclear whether *Spizzirri* bars dismissal of its counterclaim.[8]  Thus, the Court applies Second Circuit precedent, which "permits courts to dismiss rather than stay litigation pending arbitration if the party does not request a stay and if all claims in the action will be resolved by arbitration." *Dylan 140 LLC*, 982 F.3d at 858 n.2.  Plainly, not all claims in this action will be resolved through arbitration, as Greentree's breach of contract claims against Chijet remain.[9]  The Court therefore stays litigation pertaining to Chijet's counterclaim against Greentree pending the parties' arbitration.

## CONCLUSION

For the foregoing reasons, Equiniti's motion to dismiss is GRANTED with prejudice. Greentree's motion to dismiss for lack of subject matter jurisdiction, construed as a motion to compel arbitration, is also GRANTED, and Greentree's alternative motion for leave to file a Second Amended Complaint in response to Chijet's counterclaim is DENIED as moot.  Chijet's counterclaim against Greentree is STAYED pending the parties' arbitration.

The Clerk of Court is respectfully directed to terminate the open motions at Dkts. 45, 57, and 61.

**SO ORDERED.**

Date:  **July 30, 2025**
       **New York, New York**

                                        _____
                                        **VALERIE CAPRONI**
                                        **United States District Judge**

---

[8]     The text of Section 3 also suggests that a stay is only mandatory when a party requests a stay.  9 U.S.C. § 3 ("[T]he court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall on application of one of the parties stay the trial of the action* until such arbitration has been had in accordance with the terms of the agreement." (emphasis added)).

[9]     Likewise, Chijet also asserts its counterclaim against Cai, who has not appeared in this action.  Nothing in this Opinion and Order operates to stay Chijet's counterclaim as it pertains to Cai.